# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MOSHE ATTIAS and MARION COURT, LLC,** | CIVIL ACTION |
| *Plaintiffs*, | |
| v. | NO. 19-866 |
| **532 BROOKLYN, LLC and ALAIN KODSI,** | |
| *Defendant*. | |

**Goldberg, J.**                                                                                        December 12, 2019

## MEMORANDUM

The case before me involves one of several ongoing disputes related to a series of failed real estate development transactions in and around Philadelphia, Pennsylvania. In November 2018, Rachel Foster, 532 Brooklyn, LLC ("532 Brooklyn"), and DEMK, LLC ("DEMK") brought suit against Moshe Attias and Unity Loft, LLC ("Unity") alleging liability arising out of four of these transactions (the "Foster Action").[1] Thereafter, on February 15, 2019, Moshe Attias and Marion Court, LLC filed suit in state court against 532 Brooklyn and Alain Kodsi (who is Rachel Foster's husband), alleging liability arising out of a separate real estate transaction (the "Attias Action"). Following removal of the Attias Action to federal court, both the Foster and Attias Actions were administratively consolidated.

Plaintiffs in the Attias Action (Attias and Marion Court, LLC) now seek to amend their Complaint to join WPHL Housing Associates, LLC ("WPHL") as a defendant and to assert claims

---

[1] On December 11, 2019, I issued an opinion in that action denying Defendants' motion to dismiss the RICO cause of action.

against WPHL in connection with a fifth failed real estate transaction. For the following reasons, I will grant the Motion.

I.  FACTUAL BACKGROUND

   A.  **Facts in the Original Complaint**

The following facts are taken from Plaintiffs' Complaint in the Attias Action:[2]

In July 2016, Plaintiff Attias was the sole member of Plaintiff Marion Court, which in turn was the sole owner of a property located at 5824-38 and 5840-50 N. 13th Street, Philadelphia, PA ("the 13th Street Property"). The 13th Street Property consisted of a lot with two buildings, one designated as Building 1 and the other designated as Building 2. (Compl. ¶¶ 6–8.)

In July 2016, Defendant Kodsi approached Attias for the purpose of conducting a § 1031 exchange.[3] The two men agreed to jointly renovate Buildings 1 and 2 and convert said buildings into apartments under the following terms:

   a.  Attias, through Marion Court, would sell the 13th Street Property to 532 Brooklyn for $3.8 million.

   b.  The sale proceeds would be used to clear mortgages, liens, and past taxes on the 13th Street Property and to renovate Building 1.

   c.  Upon completion of the Building 1 renovations, 532 Brooklyn would transfer title to Building 1 to Kodsi.

   d.  The parties would then obtain construction financing in the amount of $1.2 million, using Building 1 as collateral, to renovate and complete construction of Building 2.

   e.  Upon payment of $250,000 by Attias, 532 Brooklyn would transfer title of Building 2 to Attias.

---

[2] In deciding a motion under Federal Rule of Civil Procedure, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

[3] A § 1031 exchange is a tax-deferred land exchange pursuant to Section 1031 of the Internal Revenue Code, 26 U.S.C. § 1031.

2

  f. The parties would share certain profits derived from the construction and renovation of the 13th Street Property.

(Compl. ¶¶ 11–13.)

A closing for the sale of the 13th Street Property took place on September 8, 2016, during which Attias executed a deed transferring ownership of the 13th Street Property to 532 Brooklyn in exchange for $3.8 million. The parties agreed that Kodsi and 532 Brooklyn would pay $2,330,669.50 of the purchase price at or near the closing and that the remaining portion of the purchase price, plus legal fees, would be paid on September 7, 2017. (Id. ¶¶ 16, 18, 19.) Payment of the remaining purchase price was secured by a promissory note. According to the Complaint, Defendants have not paid any portion of the remaining purchase price to Plaintiffs. (Id. ¶¶ 20–22.)

Between 2016 and 2017, Plaintiffs performed substantial renovations on Building 1. In 2017, however, Defendant Kodsi directed Plaintiffs to send all of their construction forces to another construction project, which the parties were then working on at the old West Philadelphia High School. Defendants' demand prevented Plaintiffs from completing construction and renovation work on the 13th Street Property. (Id. ¶¶ 23–25.)

In 2018, Defendants agreed to make scheduled payments to Plaintiffs for the completion of the development of Building 1. After February 9, 2018, however, they ceased making payments.

Subsequently, on May 26, 2018, without Plaintiffs' knowledge or consent, Defendants sold the Property to 5824 N 13th Street LLC, which is an entity managed by Kodsi's friend and business partner Lael Shultz. According to the Complaint, the sale price for the 13th Street Property was millions of dollars below its fair market value. In conjunction with that sale, Defendants and 5824 N 13th Street caused a mortgage in the amount of $8,000,000 to be placed on the 13th Street

Property. Plaintiffs aver that Defendants are now renovating the 13th Street Property with Schultz, to the exclusion of Plaintiffs, and have barred Plaintiffs from entering the 13th Street Property to retrieve their equipment. (Id. ¶¶ 26–30, 32, 34.)

### B. Procedural History

On February 15, 2019, Attias and Marion Court brought this the Attias Action against Defendants Kodsi and 532 Brooklyn in connection with the failed transaction involving the 13th Street Properties. The Complaint alleges claims for breach of contract (Count I), breach of the promissory note (Count II), fraudulent transfer (Count III), unjust enrichment (Count IV), fraud (Count V), and conversion (Count VI).

On November 5, 2018, prior to the filing of the Attias Action, Kodsi's wife (Rachel Foster) and 532 Brooklyn, LLC sued Attias and Unity Street, LLC for fraud and breach of contract with respect to four separate ventures to develop properties at (a) 1328–34 Unity Street, Philadelphia, PA; (b) 2016 2024–34 West Lippincot Street and 3101–19 North 21st Street; (c) 704–718, 720 Locust Avenue, Philadelphia, PA; and (d) 2230 East Clearfield Street, 2051 North 9th Street, 749 Locust Avenue, 15 North Rittenhouse Street, 35 North Peach Street, 117 North 57th Street, 60 Manheim Street, and 1109 State Street, Philadelphia, PA. This action, as set forth above, is known as the Foster Action.

The two Actions were administratively consolidated on July 25, 2019.

### C. The Proposed Amended Complaint

On August 21, 2019, Plaintiffs in the Attias Action moved to amend their Complaint to join an entity known as WPHL Housing Associates, LLC ("WPHL") as a Defendant and to assert claims against WPHL which allegedly arise out of the same series of transactions and occurrences currently the subject of the Attias Action.

According to the proposed amended complaint, WPHL was formed by Plaintiff Attias, Defendant Kodsi, and Andrew Bank, in mid-2016, in order to purchase and manage single-family residential properties located at 4810 Parrish Street, 4812 Parrish Street, and 2 Leverington Avenue, Unit 25, in Philadelphia, Pennsylvania (the "WPHL Properties"). Kodsi, Bank, and Foster provided $220,000 to Attias to purchase the WPHL Properties on behalf of WPHL. In January 2018, WPHL, Attias, Bank, and Kodsi entered into an agreement with respect to the WPHL Properties ("WPHL Agreement"), which provided that WPHL would enter into an agreement to sell the WPHL Properties to Attias for $220,000. The closing for the sale was to take place on or before May 1, 2018, but the WPHL Agreement provided Attias with the option of extending the closing for three additional months. (Proposed Am. Compl. ¶¶ 41–43, 45–47.)

As part of the transaction, Kodsi required that Attias transfer the ownership of certain properties, known as the Small Properties (at issue in the Foster Action), to Kodsi's children. Attias transferred ownership of the Small Properties to Kodsi's children upon WPHL's representation that it would act as agreed and transfer ownership of the WPHL Properties to Attias. (Id. ¶¶ 48–49.)

In April 2018, Attias exercised his option to extend the closing and then arranged for and provided proof of financing to purchase the WPHL Properties. (Id. ¶ 52.) WPHL, Kodsi, and Bank, however, declined to accept the payment of the purchase price and refused to convey the WPHL Properties to Attias as agreed. Thereafter, without Attias's knowledge or consent, WPHL, Kodsi, and Bank placed mortgage liens on the WPHL Properties and removed Attias as a Managing Member of WPHL. (Id. ¶ 51–55.)

The proposed amended complaint now seeks to bring claims against WPHL for specific performance and breach of contract. (Id. ¶¶ 98–122.)

## II.     STANDARD FOR LEAVE TO AMEND

Under the Federal Rules of Civil Procedure:

> A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ .P. 15(a)(1). All further amendments require the other party's consent or the leave of the court. Rule 15(a)(2).

Rule 15 sets forth a liberal approach to pleading and "[t]he court should freely give leave when justice so requires." Id.; see also Spartan Concrete Prods., LLC v. Argos USVI, Corp., 929 F.3d 107, 115 (3d Cir. 2019). "The policy favoring liberal amendments of pleadings, however, is not unbounded." Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990). The decision whether to grant or to deny a motion for leave to amend rests within the sound discretion of the district court. Foman v. Davis, 371 U.S. 178, 182 (1962); Waterfront Renaissance Assoc. v. Phila., 701 F. Supp. 2d 633, 639 (E.D. Pa. 2010). A district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (citing Foman, 371 U.S. at 182–83). Ultimately, "prejudice to the non-moving party is the touchstone for the denial of an amendment." Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (internal quotation marks omitted). "Given the liberal standard of Rule 15(a), the party opposing amendment bears the burden of showing undue delay, bad faith, prejudice or futility." Kang Haggerty & Fetbroyt, LLC v. Hayes, No. 17-1295, 2018 WL 2461898, at *2 (E.D. Pa. June 1, 2018).

## III. DISCUSSION

Plaintiffs seek to amend their Complaint to join WPHL as a defendant and to allege claims relating to the WPHL Properties. They assert that the Foster Action, the Attias Action, and the proposed amendment to the Attias Action all concern real estate transactions between Attias and his fully-owned entities, on one hand, and Kodsi, Bank, Foster, and their fully-owned entities, on the other hand. By joining WPHL—whose principals are Kodsi and Bank—and adding allegations regarding the WPHL Properties, Plaintiffs posit that the parties will be able to adjudicate that dispute along with the other disputes already at issue in the consolidated cases. They conclude that "[l]itigating the claims together, rather than in piecemeal litigation, would streamline the discovery and trial of the real estate disputes and would avoid multiple depositions and potentially inconsistent rulings on the same legal and factual issues." (Pls.' Mot. 7.)

Defendants Kodsi and 532 Brooklyn counter that the amendment should be denied for four reasons. First, they urge that there are no common issues of law and fact and that the proposed claims do not arise out of the same transaction or occurrence. Second, they assert that the amendment is futile because any contract claims are barred by the Statute of Frauds. Third, Defendants claim that Plaintiffs unduly delayed the proposed amendment. Finally, they contend that Plaintiffs have acted in bad faith.

### A. Common Issues of Law or Fact

Defendants first contend that the dispute regarding the 13th Street Property, currently at issue in the Attias Action, and the dispute over the WPHL Properties arise out of separate and distinct transactions taking place years apart and involving different parties. Specifically, they note that the dispute over the 13th Street Property involves a July 2016 agreement between Plaintiffs Marion Court and Attias, and Defendants 532 Brooklyn and Kodsi. The agreement

allegedly included both a promissory note and an agreement among the parties to jointly renovate the buildings on that Property into apartments. By contrast, the WPHL Properties' dispute involves an agreement entered in January 2018 between Plaintiff Attias, Defendant Kodsi, and a new entity, WPHL, in which Attias, Kodsi, and third-party Bank were all principals. The agreement involves different properties and invokes different obligations.

While Defendants are correct that these disputes involve two different contractual agreements, there is substantial overlap among the parties and the general subject matter. Both the Foster Action and the Attias Action—which, as noted above, have been administratively consolidated—involve a series of failed real estate and development transactions between Attias, and his affiliated LLCs (Unity Loft and Marian Court), and Kodsi and Foster and their affiliated LLCs (DEMK, 532 Brooklyn, and WPHL). Although each transaction involved different properties and different obligations, the disputes are interconnected by their players and their general nature.

Moreover, and perhaps more importantly, Plaintiffs are within the applicable statute of limitations period to assert claims in a separate lawsuit against WPHL for breach of contract and specific performance. See 42 Pa. Cons. Stat. § 5525 (four years for contracts); 42 Pa. C.S. § 5526 (five years for specific performance). As such, a refusal to allow amendment of the Complaint will likely result in the filing of a third related action, which will either need to be administratively consolidated with the Foster and Attias Actions, or will have to be litigated separately despite the involvement of the same parties and similar types of transactions. Thus, considerations of judicial economy counsel in favor of allowing amendment.

### B. Futility

Defendants next argue that the proposed amendment is futile. "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Holst v. Oxman, 290 F. App'x 508, 510 (3d Cir. 2008) (quotations omitted). The futility analysis on a motion to amend is essentially the same as the standard for legal sufficiency under Federal Rule of Civil Procedure Rule 12(b)(6). Id. The trial court may thus deny leave to amend where the amendment would not withstand a motion to dismiss. In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Given the liberal standard for the amendment of pleadings, "courts place a heavy burden on opponents who wish to declare a proposed amendment futile." Aruanno v. New Jersey, No. 06–296, 2009 WL 114556, at *2 (D.N.J. Jan. 15, 2009). "If a proposed amendment is not *clearly* futile, then denial of leave to amend is improper." 6 Wright, Miller & Kane, Federal Practice & Procedure § 1487 (2d ed. 1990) (emphasis added).

Here, Defendants argue that the proposed amendment is futile because it is barred by the Pennsylvania Statute of Frauds. "[T]he Statute of Frauds provides in effect that no agreement for the sale of real estate will be enforced unless it is in writing and signed by the party to be charged." Fannin v. Cratty, 480 A.2d 1056, 1058 (Pa. Super. Ct. 1984). According to Defendants, the only written contract regarding the sale of the WPHL Properties is prospective in nature and merely contemplates a future agreement. Specifically, they note that the WPHL Contract states that "[t]he parties *intend* to draft a comprehensive agreement to effect the agreements set forth in this term sheet" and that WPHL "*will* enter into an agreement" to sell the WPHL Properties. (see Proposed Amended Complaint, Ex. 6 (emphasis added).) Defendants posit that such an agreement to agree is not enough to satisfy the Pennsylvania Statute of Frauds.

Defendants' analysis is insufficient to meet their heavy burden of establishing that the proposed amendment is "clearly futile." The WPHL Agreement, attached as an exhibit to the proposed amended complaint, appears to set forth all of the required terms for the sale of the WPHL Properties, including the property address, the price, the date of the sale, and the terms of the sale. While Defendants are correct that the Agreement uses prospective language and contemplates another future agreement, the allegations of the proposed amended complaint, taken as true, set forth a plausible breach of contract claim based on the attached WPHL Agreement. In turn, I do not find that the claim is futile.

### C. Undue Delay and Prejudice

Defendants next contend that Plaintiffs unduly delayed in proposing the amendment.

The law is well established that the mere passage of time does not require that a motion to amend a complaint be denied. Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984). Rather, a defendant must show either undue delay, prejudice to the opposing party, or bad faith. Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir. 2008). The "undue delay" inquiry recognizes that "a gap between when amendment becomes possible and when it is actually sought can, in certain circumstances, be grounds to deny leave to amend." Mullin v. Balicki, 875 F.3d 140, 151 (3d Cir. 2017). "[U]ndue delay refers to delay in the proceedings, not to delay in amending the pleadings." Wausau Underwriters Ins. Co. v. Shisler, 190 F.R.D. 341, 344 (E.D. Pa. 1999). Courts balance the reasons for not amending sooner against the burden of delay on the Court. Heraeus Med. GmbH v. Esschem, Inc., 321 F.R.D. 215, 218 (E.D. Pa. 2017).

Here, Defendants have made no showing that the delay was undue. Plaintiffs filed suit in state court on February 15, 2019, and Defendants removed to federal court on February 28, 2019. Defendants failed to timely file an answer until prompted by the threat of default. On May 8, 2019,

Defendants filed an answer with counterclaims, but subsequently—following a Court conference—withdrew their counterclaims as improperly pled. Following Defendants' filing of an amended answer, a scheduling conference was held and, less than a month later, Plaintiffs moved to amend. While there was some unexplained delay between the filing of the original complaint and Plaintiffs' request to amend, I do not find that the delay was undue, such that amendment will disrupt the schedule of this case. Indeed, this case remains at is earliest stages.

Moreover, and despite the fact that prejudice is the "touchstone" for the denial of leave to amend, Defendants have not discussed prejudice at all. The issue of prejudice focuses on the hardship to the defendant if the amendment were permitted. Adams, 739 F.2d at 868. To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, significantly delay the resolution of the dispute, or prevent a party from bringing a timely action in another jurisdiction. Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004). Defendants do not articulate, and I cannot independently discern, any prejudice that Defendants may experience if amendment is permitted.

### D. Bad Faith

Defendants' final challenge to leave to amend contends that the amendment is being sought in bad faith. Defendants argue that Plaintiffs' motivation is to prevent proposed Defendant WPHL from selling the WPHL Properties during the pendency of this litigation and to gain leverage over the members of WPHL in the Foster Action.

I disagree that this argument suggests bad faith. Bad faith is limited to an inquiry into the plaintiff's motives for not amending the complaint earlier, not on whether the complaint itself is in bad faith. J.E. Mamiye & Sons, Inc. v. Fidelity Bank, 813 F.2d 610, 614 (3d Cir. 1987); see

also Trueposition, Inc. v. Allen Telecom, Inc., No. 01-823, 2002 WL 1558531, at *2 (D. Del. July 16, 2002) ("The scope of the court's inquiry is . . . limited to whether the motion to amend *itself* is being made in bad faith, not . . . whether conduct outside the motion to amend amounts to bad faith." (emphasis in original)).

Here, Defendants' argument underscores why the claims relating to the WPHL Properties should be joined in this matter. Given that the dispute over the WPHL Properties is connected with the other real estate transactions at issue, amendment will allow adjudication of the totality of the dispute at once rather than via piecemeal litigation.

### D. Conclusion as to Leave to Amend

In sum, Defendants have not met their burden of showing why leave to amend should not be granted here. The proposed amended claims are related to the two consolidated cases and involve almost the identical parties. Taking the allegations of the proposed amended complaint as true, the proposed new claims are not clearly futile under the Statute of Frauds. Finally, Defendants have not made a sufficient showing of undue delay, prejudice, or bad faith. Accordingly, I will grant Plaintiffs' Motion for Leave to File an Amended Complaint.